IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: BLOOD REAGENTS ANTITRUST LITIGATION | MDL No. 09-2081 |
| | ALL CASES |

DuBOIS, J.                                                              December 14, 2010

## MEMORANDUM

### I.   INTRODUCTION

In these consolidated antitrust actions, plaintiffs allege that the two leading producers of blood reagents – Immucor, Inc. ("Immucor") and Ortho Clinical Diagnostics, Inc. ("Ortho Clinical") – conspired to unreasonably restrain trade and commerce in violation of § 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. By Order of August 23, 2010, the Court denied the motions to dismiss filed by Immucor and Ortho Clinical.[1] The defendants then timely filed a Motion for Reconsideration or for Certification of an Interlocutory Appeal, which is presently before the Court. For the reasons that follow, defendants' Motion for Reconsideration and Motion for Certification of an Interlocutory Appeal are denied.

### II.   BACKGROUND

The factual background of this case is set forth fully in the Court's Memorandum of August 23, 2010 and is included in this Memorandum only to the extent necessary to explain the Court's decision. The Court notes one development since the August 23, 2010 Memorandum was issued: on November 8, 2010, counsel for Ortho Clinical advised the Court that counsel for

---

[1] The Court also granted the motion to dismiss of defendant Johnson & Johnson Health Care Systems, Inc. That part of the Order has not been challenged.

Immucor received informal notice from the Antitrust Division of the U.S. Department of Justice ("DOJ") that the government had closed its criminal investigation of the blood banking industry. (Letter of Paul H. Saint-Antoine, Nov. 8, 2010.)[2]

### III. MOTION FOR RECONSIDERATION

In their Motion for Reconsideration, defendants ask this Court to reconsider its decision that plaintiffs' Consolidated Amended Complaint ("CAC" or "the Complaint") plausibly states a claim for violation of § 1 of the Sherman Act under the standard announced in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and clarified in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). The motion rests largely on the Third Circuit's decision in In re Ins. Brokerage Antitrust Litig., 618 F.3d 300 (3d Cir. 2010), which was issued a week before the Court issued its Memorandum and Order in this case. The Court made reference to Insurance Brokerage in the Memorandum but did not assess whether Insurance Brokerage modified the legal standard applicable to motions to dismiss in a way that could impact this case. See In re Blood Reagents Antitrust Litig., MDL No. 09-2081, 2010 WL 3364218, at *4 (E.D. Pa Aug. 23, 2010). Thus, in addressing the Motion for Reconsideration, the Court will perform a more searching analysis of Insurance Brokerage.

#### A. Legal Standard

The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). A prior decision may be altered or amended only if the party seeking reconsideration establishes at least one of the following grounds: (1) an intervening change in controlling law, (2)

---

[2] The Court has not received a formal closing letter from defendants but will nonetheless assume the DOJ investigation has closed in analyzing the pending motions.

the availability of new evidence that was not available when the court issued its order, or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Id. Moreover, a motion for reconsideration is not properly grounded on a request that a court rethink a decision already made. Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993); see also United States v. Jasin, 292 F. Supp. 2d 670, 676 (E.D. Pa. 2003) ("Parties are not free to relitigate issues which the court has already decided."). A motion for reconsideration "addresses only factual and legal matters that the Court may have overlooked. It is improper on a motion for reconsideration to ask the Court to rethink what it had already thought through – rightly or wrongly." Glendon Energy, 836 F. Supp. at 1122.

B.  The Insurance Brokerage Decision

Insurance Brokerage arose out of an alleged far-reaching conspiracy in the insurance industry. 618 F.3d at 308. The plaintiffs alleged that insurance brokers conspired with insurers – and the insurers conspired among themselves – to steer particular clients to particular insurers in exchange for commissions. Id. at 312. The plaintiffs further alleged a "global conspiracy" in which each cohort of conspiring brokers and insurers agreed not to compete with other cohorts. Id. at 313.

The plaintiffs' complaint leveled several allegations designed to nudge the complaint across the line that separates mere possibility from plausibility, as required by Twombly. First, in the individual conspiracies, plaintiffs averred that the brokers entered into similar agreements with each insurer and communicated the details of their deals to all the insurers. Id. at 327. The plaintiffs also alleged that the defendant insurance companies used similar strategies to avoid reporting details of their commission payments on their tax forms. Id. at 335. Finally, the

plaintiffs asserted that the defendant insurers had, in some cases, submitted inflated sham bids to ensure that particular insurers would receive the business. Id. at 336.

In the global conspiracy, the plaintiffs alleged, inter alia, that all of the brokers were members of the same trade group and adopted many of the trade group's suggestions in their operations. Id. at 349. Further, the plaintiffs averred, the similarity of each individual conspiracy demonstrated that the brokers had agreed not to reveal to each other's clients that they were paying supra-competitive premiums. Id. at 350-51.

The Third Circuit set forth the following standard in evaluating the plaintiffs' claims:

> Twombly makes clear that a claim of conspiracy predicated on parallel conduct should be dismissed if "common economic experience," or the facts alleged in the complaint itself, show that independent self-interest is an "obvious alternative explanation" for defendants' common behavior.

Id. at 326. In applying that standard, the court held that the majority of plaintiffs' allegations did not make horizontal conspiracies among the insurers or among the brokers any more plausible.[3] In the individual conspiracies, the court explained that it was in insurers' self-interest to pay commissions to gain access to brokers' books of business. Id. at 327-28. The court also stated that it was in the insurers' self-interest to conceal evasive reporting techniques utilized by all; to do otherwise would put at risk their own ability to continue the practices. Id. at 335.

In the global conspiracy, the Third Circuit found that trade group membership provided only the opportunity to conspire, which, without more, was not enough to demonstrate a plausible conspiracy. Id. at 349. Moreover, the court reasoned, each broker had an independent,

---

[3] The Third Circuit did not address whether the plaintiffs successfully pleaded a vertical conspiracy between the brokers and insurers because the plaintiffs pursued only per se antitrust violations. Vertical restraints are almost always analyzed under a rule-of-reason analysis. Insurance Brokerage, 618 F.3d at 318.

self-interested reason not to blow the whistle on its competitors: if it did, it risked destroying its own ability to use the same strategies. Id. at 350. Thus, that court concluded, independent action was an "obvious alternative explanation" for all of these allegations.

The Third Circuit did, however, rule that the accusation of bid rigging was enough to move the allegation that the insurers agreed not to compete for one another's business from possible to plausible. Id. at 341. The court stated that bid rigging is "quintessentially collusive behavior" and that there was enough well-pleaded factual material within the allegations of bid rigging to suggest that the bid rigging arose from a horizontal agreement among the insurers and not just separate vertical agreements between each insurer and broker. Id. at 336, 337.

C.  Analysis

As Insurance Brokerage was issued a week before the Court's opinion in this case, there is no "intervening change in controlling law" that would merit reconsideration. Max's Seafood Café, 176 F.3d at 677. Outside of the closing of the DOJ investigation, there is no "new evidence that was not available" when the court issued its Order. Id. Thus, the major dispute between the parties is whether Insurance Brokerage altered or clarified the law in a way the Court failed to consider, leading to a clear error of law in its decision.[4] This is a close question. Ultimately, however, the Court concludes that Insurance Brokerage does not mandate dismissal of the Complaint, and accordingly denies the Motion for Reconsideration.

---

[4] Defendants also reassert their argument that plaintiffs have failed to even make a threshold demonstration of parallel behavior by defendants. (Mot. for Recons. at 16-17.) The Court rejects this argument as a "request to rethink what it ha[s] already thought through." Glendon Energy, 836 F. Supp. at 1122.

1. *Plaintiffs allege conduct for which self-interested behavior is not an "obvious alternative explanation"*

Insurance Brokerage clarified that where self-interested behavior is an "obvious alternative explanation" for all of the defendant's alleged activity, the plaintiff has failed to state a plausible § 1 claim. 618 F.3d at 326. In analyzing the complaints at issue in Insurance Brokerage, the Third Circuit addressed each alleged "factual enhancement" or "plus factor" – each allegation beyond mere parallel conduct, designed to nudge the complaint across the line separating possibility and plausibility – one at a time. See id. at 327-51; see also Superior Offshore Int'l, Inc. v. Bristow Grp., Inc, --- F. Supp. 2d ---, No. 09-CV-438, 2010 WL 3699923, at *9-12 (D. Del. Sept. 14, 2010). Thus, this Court must first examine each alleged "plus factor" to determine whether self-interested behavior is an "obvious alternative explanation" for the conduct alleged.

Defendants correctly assert that several of the "plus factors," when viewed one at a time, are at least equally consistent with the "obvious alternative explanation" that the defendants were acting in their own self-interest. Common trade association membership is consistent with lawful, pro-competitive behavior, as is inter-company hiring. See Superior Offshore, 2010 WL 3699923, at *11. Further, while the consolidated nature of the blood reagents industry makes conspiring easier, it also makes it more likely that firms in the market will independently decide to raise prices at about the same time. See Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 227 (1993) ("Tacit collusion, sometimes called oligopolistic price coordination or conscious parallelism, describes the process, not in itself unlawful, by which firms in a concentrated market might in effect share monopoly power, setting their prices at a

profit-maximizing, supracompetitive level by recognizing their shared economic interests and their interdependence with respect to price and output decisions."). More specifically, for the same reason, the price increases for blood reagents between 2000 and 2008 could just as easily represent independent action.[5]

However, plaintiffs also have alleged "plus factors" for which independent self-interest is not an "obvious alternative explanation." The Complaint alleges that Immucor and Ortho Clinical cancelled contracts almost simultaneously with one of the largest group purchaser organizations in the blood reagents industry and demanded an almost identical price increase. (CAC ¶¶ 77-78.) When Immucor cancelled its contract, it said it was doing so "for the purpose of increasing prices . . . which will occur simultaneously with the cancellation." (Id. ¶ 79.) Immucor boasted that it did not expect to lose any business (id. ¶ 81), and an industry publication noted that "it is rare for a health care supplier to invoke [a cancellation clause] just to raise prices, and even more unusual to announce the fact." (Id. ¶ 82.)

Contrary to defendants' assertions, this is not another allegation of mere parallel pricing. Immucor's public announcement of the contract cancellation cut against its self-interest by providing Ortho Clinical with an opportunity to increase its share of blood reagents business. The industry publication's description of the contract cancellation and concomitant announcement as "rare" and "unusual" supports the notion that independent self-interested behavior is not an "obvious alternative explanation" given the "common economic experience" of the health care industry.

---

[5] Because the DOJ investigation has been closed, the Court need not analyze whether independent behavior is an "obvious alternative explanation" for the existence of a criminal investigation.

The Complaint also alleges that defendants furthered their conspiracy through a "customer-allocation scheme." (Id. ¶ 85.) Notably, the Complaint alleges that when a customer allocated to one company approached the other company to do business, the second company sometimes "quoted unreasonably high prices for [its] products." (Id.) Read in the light most favorable to the plaintiffs, this allegation is no different from the "quintessentially collusive" entering of sham bids in Insurance Brokerage. 618 F.3d at 336.

It certainly is possible that the contract cancellations and unreasonable price quotations were not the result of collusive behavior. But neither Twombly nor Insurance Brokerage requires an antitrust plaintiff to plead facts that, if true, definitively rule out all possible innocent explanations. See Twombly, 550 U.S. at 556 ("[O]f course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.") (internal quotation marks and citation omitted); Insurance Brokerage, 618 F.3d at 341 n.42 ("[T]he Twombly standard does not . . . require as a general matter that the plaintiff plead facts supporting an inference of defendant's liability more compelling than the opposing inference."); see also W. Penn Allegheny Health Sys., Inc. v. UPMC, --- F.3d ---, No. 09-4468, 2010 WL 4840093, at *8 (3d Cir. Nov. 29, 2010) ("We conclude that it is inappropriate to apply Twombly's plausibility standard with extra bite in antitrust and other complex cases.").

Plaintiffs have pleaded facts for which independent self-interested behavior is not an "obvious alternative explanation." The Court next turns to the question whether, in light of the contract cancellation and inflated price quotations, the Complaint plausibly states a conspiracy in violation of § 1.

### 2. *Viewed in Context, Plaintiffs' Allegations State a Claim Upon Which Relief Can Be Granted*

The analysis of whether a complaint states a claim upon which relief can be granted need not take place in a vacuum, as Insurance Brokerage does not undermine the Court's assertion that "Twombly emphasized context." Blood Reagents, 2010 WL 3364218, at *6. Thus, the Court considers all allegations of the Complaint – including those that would not, on their own, be sufficient to allege a plausible conspiracy – in making its determination.

Prior to 2000, the blood reagents industry was so unprofitable that both defendants considered abandoning the industry. (CAC ¶ 73.) In the second half of the 1990s, Immucor purchased several competitors, consolidating power in the two defendants. (Id. ¶¶ 58-59.) Shortly thereafter, Immucor and Ortho Clinical both raised prices significantly, the first time in more than fifteen years that prices on blood bank products increased. (Id. ¶¶ 67-68.) The price increases continued through 2008. (Id. ¶¶ 69-70.) On this issue, an Ortho Clinical employee in 2003 "discussed a 'presentation' he had made, which went 'into a lot of detail regarding why [Ortho Clinical] and Immucor implemented this significant price increase.'" (Id. ¶ 71.) Defendants also were members of the same trade association and engaged in inter-company hiring of high-level executives. (Id. ¶¶ 113-18.)

Against the backdrop of this evidence of motive and opportunity to collude, the Court concludes, considering the allegations of behavior for which independent self-interested activity is not an "obvious alternative explanation," that the Complaint plausibly avers a conspiracy between the defendants in violation of § 1. Thus, plaintiffs have stated a claim upon which relief can be granted, and defendants' Motion for Reconsideration is denied.

## IV. MOTION FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL

In the alternative, defendants argue the Court should certify its denial of the motions to dismiss for an interlocutory appeal by the Third Circuit.[6] The Court disagrees and denies that motion.

### A. Legal Standard: 28 U.S.C. § 1292(b)

A court may exercise its discretion to grant leave to file an interlocutory appeal under 28 U.S.C. § 1292(b) only if its order: (1) involves a "controlling question of law," (2) offers "substantial ground for difference of opinion" as to its correctness, and (3) if appealed immediately, "materially advance[s] the ultimate termination of the litigation." Katz v. Carte Blanche Corp., 496 F.2d 747, 754 (3d Cir. 1974). With respect to the first factor, the Third Circuit has defined a "controlling question of law" to "encompass at the very least every order which, if erroneous, would be reversible error on final appeal." Id. at 755.

All three conditions must be met before a court may certify an order for interlocutory appeal. Aparicio v. Swan Lake, 643 F.2d 1109, 1110 n.2 (5th Cir. 1981). Moreover, a court should certify decisions for interlocutory review only in exceptional circumstances. See Coopers & Lybrand v. Livesay, 437 U.S. 463, 474-75 (1978); Milbert v. Bison Labs., Inc., 260 F.2d 431, 433 (3d Cir. 1958); Johnson v. Columbia Cas. Co., No. 03-CV-1552, 2006 WL 1805979, at *1 (E.D. Pa. June 29, 2006).

### B. Analysis

As noted above, certification is appropriate only when it "materially advance[s] the

---

[6] Defendants also ask the Court to certify its denial of their Motion to Stay Discovery Pending Completion of Parallel Criminal Investigation. Given that the DOJ investigation has closed, that part of the motion is denied as moot.

ultimate termination of the litigation." 28 U.S.C. § 1292(b); Katz, 496 F.2d at 754. In this case, even if the Third Circuit were to overrule the Court and dismiss the Complaint, plaintiffs would be granted leave to file an amended complaint. See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) ("We have held that . . . if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile."). And before providing for the filing of an amended complaint, this Court would consider allowing reasonable discovery. As a general rule, appellate courts do not grant interlocutory appeals from a motion to dismiss because it encourages "piecemeal litigation." Caraballo-Seda v. Municipality of Hormigueros, 395 F.3d 7, 9 (1st Cir. 2005).[7]

Because certification would not "materially advance the ultimate termination of the litigation," it is unnecessary to examine whether the Court's Order denying defendants' motions to dismiss satisfies the other requirements of § 1292(b). Accordingly, the Motion for Certification of an Interlocutory Appeal is denied.

## V. CONCLUSION

For the foregoing reasons, defendants' Motion for Reconsideration and their Motion for Certification of an Interlocutory Appeal are both denied. An appropriate order follows.

---

[7] The Third Circuit declined to hear an appeal last year in another antitrust case in which the district court certified its denial of a motion to dismiss. See In re Chocolate Confectionary Antitrust Litig., No. 09-8027 (3d Cir. May 14, 2009) (declining, without comment, to hear appeal of denial of motion to dismiss that was certified for interlocutory appeal by district court, 607 F. Supp. 2d 701 (M.D. Pa. 2009)).