**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: BLOOD REAGENTS ANTITRUST LITIGATION** | **MDL No. 09-2081**<br><br>**ALL CASES** |

## JOINT PROPOSED TRIAL PLAN

In accordance with this Court's Case Management Order No. 4, the parties jointly submit the following proposed Trial Plan.  In general, this Trial Plan proposes that the Court adopt a phased approach to the adjudication of (1) issues on liability and aggregate damages common to the class; (2) the statute of limitations defense and the related claims of fraudulent concealment, if necessary; and (3) any other individualized issues relating to the damages claims, if necessary. By jointly submitting this Trial Plan, Defendant Ortho-Clinical Diagnostics, Inc. ("Ortho") does not waive any arguments or defenses in opposition to class certification and/or in response to the merits of Plaintiffs' claims; and Plaintiffs do not waive any arguments regarding the necessity of separate proceedings on any elements of Plaintiffs' claims of fraudulent concealment or damages.  In addition, both Plaintiffs and Ortho reserve the right to propose amendments to the Trial Plan in advance of trial in light of reports from experts, changes in the law or factual record, and/or court orders arising from any motions, including dispositive and *Daubert* motions.

The parties' joint proposal for the adjudication of Plaintiffs' claims and Ortho's defenses is explained more fully below, with the areas of disagreement noted.

**I.      AREAS OF TRIAL PLAN AGREED ON BY THE PARTIES:  PHASE ONE – LIABILITY AND AGGREGATE DAMAGES ISSUES COMMON TO THE CLASS**

On October 19, 2015, pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3), this Court certified a Class consisting of:  "All individuals and entities who purchased traditional blood reagents in the United States directly from defendants Immucor, Inc., and Ortho-Clinical Diagnostics, Inc. at any time from November 4, 2000 through the present.  Excluded from the

Class are defendants, and their respective parents, subsidiaries and affiliates, as well as any federal government entities."  The parties agree that the following claims, issues, and defenses common to the Class will be subject to a jury trial during Phase One:

1. Whether Ortho and Immucor, Inc. ("Immucor") (collectively "Defendants") engaged in a conspiracy between themselves to fix, raise, maintain, and/or stabilize prices of traditional blood reagents ("TBRs") in the United States in violation of Section 1 of the Sherman Act;

   - Plaintiffs allege that in 2000, Defendants conspired to substantially increase the prices for TBRs by agreeing to impose substantial price increases in 2001, with additional price increases to follow, including substantial ones in 2005 and 2008.

   - Ortho denies that it entered into any such unlawful conspiracy with Immucor with respect to the prices of TBRs.  Ortho asserts, for example, that the price increases beginning in 2001 were the result of lawful, unilateral decision-making by TBR suppliers in the duopoly market.

2. The inception and duration of the alleged conspiracy;

   - Plaintiffs allege that beginning on or about November 4, 2000 and continuing until at least the date of the filing of the first Complaint in May 2009, Defendants engaged in a continuing conspiracy in restraint of trade with respect to the pricing of TBRs.

   - Ortho denies there was such an unlawful conspiracy at any time with Immucor, and further denies that there was any continuing unlawful conspiracy with Immucor with respect to the pricing of TBRs.

3. If the jury determines that Defendants engaged in an unlawful conspiracy, whether Defendants' unlawful conduct caused injury to the business and property of Named Plaintiffs and other members of the Class;

   - Plaintiffs allege that Defendants engaged in unlawful conduct that injured the business and property of members of the Class because Named Plaintiffs and other members of the Class paid more for TBRs as a result of the Defendants' unlawful conduct than they would have paid in the absence of the alleged conspiracy.

   - Ortho denies that any alleged conspiratorial conduct caused injury to Named Plaintiffs and other members of the Class.  Ortho asserts, for example, that to the extent that Named Plaintiffs and other members of the Class paid increased prices for TBRs beginning in 2001, the increased prices resulted from lawful, unilateral decision-making by TBR suppliers in the duopoly market.

4.  The duration of the antitrust impact from the alleged conspiracy;

- Plaintiffs assert that the purported unlawful conduct resulted in Named Plaintiffs and other members of the Class paying higher prices for TBRs from 2001 through 2010 (the alleged "damages period") than they otherwise would have paid in the absence of the alleged conspiracy.

- Ortho denies that Named Plaintiffs and other members of the Class suffered antitrust impact at any time as a result of the alleged conspiracy.  Ortho further denies that members of the Class suffered antitrust impact during any of the years of the alleged damages period.

5.  The amount of aggregate damages allegedly sustained by Named Plaintiffs and other members of the Class.

- Relying on expert opinion and testimony, Plaintiffs calculate that the aggregate amount of damages Named Plaintiffs and other members of the Class are entitled to through December 2010 as a result of the alleged unlawful conspiracy ranges from $711.8 million to $772.0 million, or from $655.7 million to $714.7 million, if there is a further adjustment for changes in cost (subject to further revisions due to, inter alia, Ortho's recent production of additional cost information relied on by Ortho's damages expert).  Plaintiffs will provide a final calculation of the aggregate amount of damages no later than the close of Expert Discovery.

- Ortho asserts that even if the jury determines that the alleged conduct violated Section 1 of the Sherman Act, the amount of provable damages in the aggregate is zero.  Alternatively, Ortho asserts that if the jury determines that Named Plaintiffs and other members of the Class suffered any antitrust damages as a result of the alleged conspiracy, the amount of provable damages in the aggregate is substantially smaller than the amount claimed by Plaintiffs.  Ortho will provide Plaintiffs with its supplemental opinions on the issue of aggregate damages no later than the close of Expert Discovery.

## II.   AREAS OF TRIAL PLAN SUBJECT TO DISAGREEMENT

The process for addressing issues related to Ortho's statute of limitations defense and Plaintiffs' related claims for fraudulent concealment are subject to disagreement between the parties.  The four-year statute of limitations bars claims by Named Plaintiffs and other members of the Class for damages prior to May 18, 2005, unless they can prove all three elements of fraudulent concealment.  To establish the three elements of the fraudulent concealment claim,

"'an antitrust plaintiff must show three things:  (1) fraudulent concealment; (2) failure on the part of the plaintiff to discover his cause of action notwithstanding such concealment; and (3) that such failure to discover occurred [notwithstanding] the exercise of due care on the part of the plaintiff.'"  *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 160 (3d Cir. 2002) (quoting 70 A.L.R. Fed. 498 (1982)).  As this Court recognized, '[i]t is true that an action implicating fraudulent concealment raises some individual issues, including whether an individual plaintiff knew of the alleged violation and whether he exercised due diligence."  *In re Blood Reagents Antitrust Litig.*, 283 F.R.D. 222, 245 (E.D. Pa. 2012), *vacated on other grounds*, 783 F.3d 183 (3d Cir. 2015).  Also, this Court has already held that "individual issues relating to fraudulent concealment 'can be resolved at a later damages phase' if necessary."  *In re Blood Reagents Antitrust Litig*., MDL No. 09-2081, 2015 WL 6123211, at *34 (E.D. Pa. Oct. 19, 2015) (quoting *Linerboard*, 305 F.3d at 163).

The parties' disagreements regarding the process by which the issues relating to Ortho's statute of limitations defense and Plaintiffs' claims of fraudulent concealment should be adjudicated, as well as the phase during which issues related to individualized damages should be addressed, are laid out in more detail below.

### A.    Plaintiffs' Proposal

#### 1.    Certain Fraudulent Concealment Issues to be Resolved During Phase One

Plaintiffs propose that certain issues relating to Ortho's statute of limitations defense and Plaintiffs' fraudulent concealment claims be included as part of the same Phase One jury trial that addresses the common issues of liability and aggregate damages.  Plaintiffs also propose that

additional fraudulent concealment issues as to the absent class members' claims be adjudicated during Phase Two, if necessary.

This Section A.1 sets forth Plaintiffs' more specific statement of the fraudulent concealment issues that they propose to be included during the Phase One jury trial as well as Ortho's disagreements with Plaintiffs' statement of the issues:[1]

1. Whether Defendants undertook actions to conceal their allegedly unlawful conspiracy;

   - Relying on much of the same evidence Plaintiffs previously submitted in support of their Motion for Class Certification, which the Court previously determined was "substantial common evidence that defendants took affirmative acts to conceal their alleged conspiracy," *Blood Reagents*, 2015 WL 6123211, at *34, Plaintiffs intend to prove the first element of fraudulent concealment on a class-wide basis. Among the evidence Plaintiffs will rely upon to establish this element is evidence that Immucor falsified an expense report to conceal a meeting between one of its executives and an Ortho executive; that when an Ortho executive shared Ortho's pricing with an Immucor executive, he concealed the list in his briefcase in order to avoid detection; and that Defendants made false statements to hospital customers and Group Purchasing Organizations that the price increases for TBRs were due to increased costs and not the alleged conspiracy and/or the lack of competition in the marketplace.

   - Ortho's position is that when the issue of concealment is presented to the jury, the appropriate question is whether Defendants engaged in affirmative acts of concealment designed to mislead each member of the Class regarding facts supporting each class member's claim. Ortho denies that there was a conspiracy and further denies that there were any attempts to conceal any such alleged conspiracy. Ortho asserts, for example, that statements made regarding the reasons for TBR price increases were true and accurate.

2. Whether Named Plaintiffs failed to discover the alleged conspiracy notwithstanding Defendants' affirmative acts of concealment prior to May 18, 2005;

---

[1] For the reasons explained in Section B below, Ortho disagrees with Plaintiffs' proposal to divide the issues related to Ortho's statute of limitations defense and Plaintiffs' fraudulent concealment claims between Phase One and Phase Two jury trials. Plaintiffs disagree with Ortho's position that Named Plaintiffs should not be afforded the opportunity to establish their claims of fraudulent concealment during the initial jury trial. Plaintiffs also dispute Ortho's position that the Defendants' affirmative acts of concealment, several of which this Court has already identified, must be established separately for each member of the Class.

- During the Phase One trial, the Named Plaintiffs intend to establish that some, if not all, of the Named Plaintiffs did not discover the alleged conspiracy prior to May 18, 2005.

- Ortho's position is that when this issue – the second prong of the Plaintiffs' fraudulent concealment claims – is presented to the jury, the appropriate question is, for *each* member of the Class, whether the class member was aware, or should have been aware, of the facts supporting the claims until a time within the limitations period.  Ortho asserts that members of the Class did not exercise reasonable diligence and, even when members of the Class had suspicions regarding the validity of Defendants' reasons for the increased prices of TBRs, chose not to act on those suspicions.

3. Whether Named Plaintiffs' failure to discover the existence of the alleged conspiracy prior to May 18, 2005 was despite the fact that each exercised due care.

- During the Phase One trial, the Named Plaintiffs intend to establish that some, if not all, of the Named Plaintiffs exercised due care, yet failed to discover the existence of the alleged conspiracy prior to May 18, 2005.

- Ortho's position is that when this issue – the third prong of Plaintiffs' fraudulent concealment claim – is presented to the jury, the appropriate question is whether each member of the Class exercised due diligence.  Ortho asserts that members of the Class did not exercise reasonable diligence and, even when they had suspicions regarding the validity of Defendants' reasons for the increased prices of TBRs, class members chose not to act on those suspicions.

**2.      Phase Two – Additional Fraudulent Concealment Issues as to Absent Class Members and Individualized Damages Issues, if Necessary**

If Ortho is determined to be liable and an aggregate damages amount is determined at the Phase One trial, Plaintiffs will propose to the Court a plan for disseminating notice of damages awards to class members and a method of allocation to class members pursuant to a formula devised by Plaintiffs' expert, including the amount of damages allocated to each member of the Class for damages suffered prior to May 18, 2005 and the amount of damages allocated to each member of the Class for damages suffered after May 18, 2005.

As described *supra*, Plaintiffs intend to prove that Defendants engaged in affirmative acts of concealment at the Phase One trial on a class-wide basis.[2]  In addition, the Named Plaintiffs intend to prove the other two elements of fraudulent concealment as to each of them at the Phase One trial.[3]  After a determination is made at the Phase One trial on (1) whether Defendants undertook actions to conceal their unlawful conspiracy; (2) a failure on the part of the Named Plaintiffs to discover their cause of action notwithstanding such concealment; and (3) that such failure to discover occurred, notwithstanding the exercise of due care on the part of the Named Plaintiffs, Plaintiffs propose that, if necessary, each other member of the Class be afforded the opportunity during the Phase Two proceedings to establish their lack of knowledge of the alleged conspiracy and the acts of diligence they undertook in an attempt to uncover the Defendants' alleged misconduct.  Plaintiffs propose that, if necessary, Ortho will be afforded the opportunity to cross-examine each member of the Class during the Phase Two proceedings on those elements of its fraudulent concealment claims.  Plaintiffs further propose that the Court defer a decision on the exact procedure by which Phase Two will be conducted until after the Court's decision on any dispositive motions and after the Phase One issues are resolved by the jury.  Plaintiffs assert that, under certain circumstances and depending on the outcome of the Phase One trial, it might be appropriate for the Court to appoint a magistrate or special master to determine, for each class member, its appropriate share of any aggregate award of damages.

---

[2] Plaintiffs contend that *Grisham v. Phillip Morris, Inc.*, No. 02-7930, 2009 U.S. Dist. LEXIS 132703 (C.D. Cal. Dec. 3, 2009), which Ortho cites in support of its argument that the concealment prong of Plaintiffs' fraudulent concealment claim must be tried in Phase Two, is distinguishable.  Most critically, *Grisham* did not involve a class action.  In addition, in *Grisham* the resolution of the plaintiff's fraudulent concealment claim, which was to be tried *first*, would obviate the need for a "lengthy trial regarding Defendants' allegedly wrongful activities."  *Id.* at *13.  In contrast, the concealment prong of the fraudulent concealment inquiry has been tried on a class-wide basis in other cases, even when the other elements of the inquiry had to be handled in a bifurcated proceeding.  *See, e.g.*, *Greenhaw v. Lubbock County Beverage Ass'n*, 721 F. 2d 1019, 1030 (5th Cir. 1983) ("The court also asked the jury in a separate interrogatory whether defendants fraudulently concealed their price-fixing activity. This was a class issue properly put to the jury in phase one, inquiring as it did of defendants' conduct.").

[3] An adjudication of the second and third elements of the fraudulent concealment claims of the other members of the Class is not necessary if the jury, during Phase One, returns a verdict in favor of Ortho on the issues of antitrust conspiracy or antitrust impact.

Ortho's position is that adjudicating the second and third prongs of the Named Plaintiffs' fraudulent concealment claims may somehow confuse the jury, prejudice Ortho's rights on the common issues of liability and damages or create unnecessary inefficiencies.  Plaintiffs' position is that each of these arguments is baseless.  First, well-drafted jury instructions will avoid any confusion that might be caused by trying the Named Plaintiffs' claims in their entirety as part of Phase One.  Ortho has not explained why a jury would be confused by such a trial, but Plaintiffs have faith that the parties, with the Court's guidance, can prevent such confusion.  Second, there is no prejudice to Ortho from trying the second and third prongs of the Named Plaintiffs' fraudulent concealment claims during Phase One, as those inquiries will be largely focused on the conduct of the Named Plaintiffs, not Ortho or Immucor.  The evidence relating to prong one, Ortho's and Immucor's affirmative acts of concealment, is relevant to establishing Ortho's liability, and therefore will likely be offered as evidence regardless of whether or not prong one is tried during Phase One.  Consequently, no prejudice can result from trying prong one during Phase One.  Finally, it is plainly more efficient to try prong one, which focuses on Defendants' conduct and will be established using predominantly common evidence, during Phase One rather than repeatedly offering the same evidence in separate proceedings.[4]  Regarding proof of prongs two and three as to the Named Plaintiffs, it is also more efficient for the Named Plaintiffs to testify once during Phase One on all issues rather than needing to re-call those witnesses to testify separately during Phase Two on prongs two and three, if necessary.  It is unclear what efficiencies Ortho feels can be gained by preventing that testimony during Phase One.

Plaintiffs do not believe there is any reason to have a "Phase Three," as Phase Two should cover any "individual issues" relating to damages, "if necessary," including Plaintiffs'

---

[4] Plaintiffs also assert that Ortho's "trial by formula" argument, as it relates to Plaintiffs' plan to establish that Defendants took affirmative actions to conceal the alleged conspiracy utilizing predominantly common proof from Defendants' files and testimony, is baseless.  As the proof of concealment will be almost entirely the same for each Named Plaintiff and class member, it is unclear how Ortho's (or absent class members') due process rights are implicated by having that evidence considered by the jury during Phase One.

claims of fraudulent concealment (which are only relevant to the amount of damages).  Plaintiffs propose that the Court make the final determination in approving the notice plan, the procedure, if necessary, for establishing the individual elements of fraudulent concealment and the method of allocation of damages after the Phase One trial.

**B.    Ortho's Proposal**

**1.    Phase Two – Adjudication of Fraudulent Concealment Issues**

Ortho disagrees with Plaintiffs' proposal to resolve Ortho's statute of limitations defense by:  (1) dividing the adjudication of the three prongs of Plaintiffs' fraudulent concealment claims; (2) trying the individualized issues relating to the Named Plaintiffs' fraudulent concealment claims during the Phase One trial on common issues of liability and aggregate damages; and (3) handling the adjudication of the absent class members' fraudulent concealment claims differently from the claims of the Named Plaintiffs.  Instead, Ortho proposes that its statute of limitations defense and the related issues of fraudulent concealment should be addressed by separate jury trials during Phase Two, if necessary, after the jury resolves the Phase One issues agreed on by the parties.  *See, e.g.*, *Grisham v. Philip Morris, Inc.*, No. 02-7930, 2009 U.S. Dist. LEXIS 132703 (C.D. Cal. Dec. 3, 2009).[5]  As set forth below, Ortho's proposal is based on a number of important legal and practical considerations; it provides for a fair and efficient bifurcation of (1) the liability and aggregate damages issues on the one hand, and (2) the fraudulent concealment and statute of limitations issues on the other.

First, Plaintiffs' proposal leaves open the prospect of discriminatory treatment of the jury trial right.  In particular, Plaintiffs' proposal clearly provides for a jury trial on Ortho's statute of limitations defense and Plaintiffs' fraudulent concealment claims as to the claims of the Named

---

[5] Ortho asserts that Plaintiffs misapprehend Ortho's reliance on *Grisham*.  *Grisham* is one of the cases that demonstrate that statutes of limitations issues are regularly – and properly – bifurcated from liability issues.  Ortho's position is that separating the statute of limitations and fraudulent concealment issues from liability and aggregate damages issues is even more compelling in this litigation for the reasons discussed throughout this section, not the least of which is Plaintiffs' position that they will introduce a mixture of common evidence and individualized evidence on the issues related to Ortho's statute of limitations defense and Plaintiffs' fraudulent concealment claims during the Phase One trial on common issues.

Plaintiffs, but it does not commit to a jury trial on these issues for the claims of the absent class members.  *See supra* Part II.A.  This is problematic for a number of reasons.  Ortho has a right to a jury trial on the factual issues underpinning its statute of limitations defense and the related claims of fraudulent concealment.  *See, e.g.*, *Grisham*, 2009 U.S. Dist. LEXIS 132703, at *7-8 (relying on *Goodman v. Mead Johnson & Co.*, 534 F.2d 566 (3d Cir. 1976)).  That Seventh Amendment right is not dependent on whether the claims being adjudicated are as to the Named Plaintiffs or as to other members of the Class.  Moreover, under one interpretation of Plaintiffs' proposal, the Named Plaintiffs are treated differently from the absent class members with respect to the adjudication of these issues by a jury.  Thus, Plaintiffs' proposal not only gives priority to the Named Plaintiffs' adjudication of their own individualized issues, but it would infringe the Seventh Amendment rights of both Ortho and absent class members if what Plaintiffs propose is that there be a jury trial on the Named Plaintiffs' fraudulent concealment claims but not on the absent class members' fraudulent concealment claims.

Second, the evidence relating to the first prong of fraudulent concealment, including that which Plaintiffs identified in their discovery responses, is potentially a mixture of evidence that is common to the Class and that is individualized.  The evidence relating to the second and third prongs, including that which was identified in discovery by the Named Plaintiffs, is predominantly individualized.  Plaintiffs have not committed to limiting the evidence offered on any of these three elements during the Phase One trial to evidence that is common to the entire Class.  They have indicated that the evidence offered would include common evidence, evidence and testimony from Named Plaintiffs on both common and individualized evidence, evidence received during the deposition of an employee of one absent class member, and potentially documents from Defendants' files demonstrating communications with *some* absent class members.

In other words, Plaintiffs' proposal would have the Phase One jury decide (1) issues of liability and aggregate damages based only on common evidence and for the entire Class, while

at the same time also asking the Phase One jury to decide (2) Ortho's statute of limitations defense and Plaintiffs' fraudulent concealment claims as to only the Named Plaintiffs and based on a mixture of common evidence and individualized evidence.  As to the individualized evidence, Plaintiffs have even proposed to introduce during the Phase One trial some evidence specific to certain absent class members, even though, under Plaintiffs' proposal, the Phase One jury would resolve the fraudulent concealment claims of only the Named Plaintiffs.  Ortho's position is that such a procedure would lead to inappropriate jury confusion.  It also would prejudice Ortho's rights on the common issues of liability and damages and would create inefficiencies in the resolution of common issues by unnecessarily prolonging the Phase One trial with evidence and testimony unrelated to liability and aggregate damages.[6]

Third, Plaintiffs' proposal can also be read to suggest that a jury verdict favorable to the Named Plaintiffs on the second and third prongs of Plaintiffs' fraudulent concealment claims would be res judicata as to the second and third prongs of the fraudulent concealment claims for the other members of the Class.  This would be a clear violation of Ortho's due process rights, as it would deprive Ortho of the opportunity to introduce individualized evidence specific to the absent class members and to present testimony from the absent class members about their individual knowledge and suspicions during the relevant time period.  Accordingly, Ortho objects to any assertion that a jury verdict in favor of the Named Plaintiffs on the second and third prongs during Phase One would be dispositive of the second and third prongs as to the other members of the Class.  In addition, Plaintiffs' proposed procedure would constitute a prohibited "trial by formula" in violation of the Rules Enabling Act and established case law.

---

[6] While Ortho acknowledges that there may be *some* overlap in evidence that would be presented in support of Plaintiffs' claim that there was an antitrust conspiracy and Plaintiffs' claim that Defendants engaged in affirmative acts of concealment, any such overlap would be minimal.  Moreover, it would most likely be limited to evidence relating to Defendants, not to Named Plaintiffs.  Thus, Plaintiffs professed concerns about duplicative testimony of the Named Plaintiffs are over-stated.

Thus, Ortho proposes separating (1) the common issues on liability and aggregate damages from (2) the mixed and individualized issues on fraudulent concealment and statute of limitations such that each set of issues is adjudicated in separate phases.  An adjudication of the fraudulent concealment claims during Phase Two would not be necessary if the jury, during Phase One, returns a verdict in favor of Ortho on the issues of either antitrust conspiracy or antitrust impact.  If necessary, the fraudulent concealment issues that Ortho proposes be adjudicated during Phase Two include:[7]

1. For each member of the Class, whether Defendants engaged in affirmative acts of concealment designed to mislead that Class member regarding facts supporting its claim;

   - Relying on much of the same evidence Plaintiffs previously submitted in support of their Motion for Class Certification, which the Court previously determined was "substantial common evidence that defendants took affirmative acts to conceal their alleged conspiracy," *Blood Reagents*, 2015 WL 6123211, at *34, Plaintiffs intend to prove the first element of fraudulent concealment on a class-wide basis.

   - Ortho denies that there was a conspiracy and further denies that were any attempts to conceal any such alleged conspiracy.  Ortho asserts, for example, that statements made regarding the reasons for the price increases were true and accurate.  Ortho also notes that Plaintiffs have not committed to limiting the evidence offered in support of this prong to evidence that is common to the entire Class.

2. For each member of the Class, whether it exercised reasonable diligence;

   - Plaintiffs contend that members of the Class exercised reasonable diligence regarding their price-fixing claims.

   - Ortho asserts that members of the Class did not exercise reasonable diligence and, even when they had suspicions regarding the validity of the Defendants' reasons

---

[7] In July 2012, this Court denied Ortho's request to serve written pretrial discovery on absent class members related to the issue of fraudulent concealment, explaining, in part, that "little of the information Ortho requests is relevant to the common questions involved in the fraudulent concealment analysis."  *See* Order, ECF No. 193 (July 23, 2012). By submitting this proposed Trial Plan, Ortho does not abandon its argument that it is entitled to such discovery from absent class members, and it reserves its right to renew its request for such discovery in advance of any proceedings on the fraudulent concealment claims.

for the increased prices of TBRs, members of the Class chose not to act on those
suspicions.

3.   For each member of the Class, whether it was aware, or should have been aware, of
the facts supporting the claims until a time within the limitations period.

- Plaintiffs assert that members of the Class were not aware and should not have
  been aware of the facts supporting their claims within the limitations period.

- Ortho asserts that members of the Class were aware, or should have been aware
  of, the facts relied upon in support of claims in the Consolidated Class Action
  Complaint prior to the expiration of the limitations period, May 18, 2005.

Ortho proposes that the Court defer until a later date making a decision on the number
and order of the trials during Phase Two statute of limitations and fraudulent concealment issues.

## 2.   Phase Three – Individualized Damages Issues, If Necessary

If an aggregate damages amount is determined in Phase One and Named Plaintiffs and
other members of the Class prevail, in whole or in part, in Phase Two, Ortho agrees that
Plaintiffs should propose to the Court a plan for disseminating notice of damage awards to class
members and a method of allocation to class members pursuant to a formula devised by
Plaintiffs' expert, taking into account the results of Phase Two.  Ortho further agrees that, under
certain circumstances and depending on the outcome of the Phase One and Phase Two trials, it
might be appropriate for the Court to appoint a magistrate or special master to determine, for
each class member, its appropriate share of any aggregate award of damages.  If, however, the
jury concludes during Phase One that the aggregate amount of damages to be awarded to the
Class is less than the amount estimated by Plaintiffs' expert (e.g., because the jury finds that the
but-for price of TBRs is *higher* than the but-for price estimated by Plaintiffs' expert), Ortho
reserves the right to object to the use of a magistrate or special master during Phase Three.
Under such circumstances, Phase Three might require an adjudication of additional
individualized issues, including those relating to antitrust impact and/or damages.

Pursuant to Local Rule of Civil Procedure 5.1.2(9)(c), the undersigned attorneys have consented to the filing of this document by Ortho's counsel.

DATED:  March 15, 2016                    Respectfully submitted,


                                   By:      s/Jeffrey J. Corrigan
                                            Eugene A. Spector
                                            Jeffrey J. Corrigan
                                            Rachel E. Kopp
                                            Jeffrey L. Spector
                                            SPECTOR ROSEMAN KODROFF
                                                 & WILLIS, P.C.
                                            1818 Market Street, Suite 2500
                                            Philadelphia, PA  19103
                                            Tel:  (215) 496-0300
                                            Fax:  (215) 496-6611

                                            *Class Counsel*


                                            s/Paul H. Saint-Antoine
                                            Paul H. Saint-Antoine
                                            Joanne C. Lewers
                                            Richard E. Coe
                                            Chanda A. Miller
                                            DRINKER BIDDLE & REATH LLP
                                            One Logan Square, Suite 2000
                                            Philadelphia, PA 19103
                                            Tel:  (215) 988-2700
                                            Fax:  (215) 988-2757

                                            *Attorneys for Defendant Ortho-Clinical
                                            Diagnostics, Inc.*

- 14 -

## <u>CERTIFICATE OF SERVICE</u>

I, Paul H. Saint-Antoine, hereby certify that on March 15, 2016, I electronically filed the foregoing Joint Proposed Trial Plan using the Court's ECF system, which sent a Notice of Electronic Filing to all counsel of record.  The Joint Proposed Trial Plan also is available for viewing and downloading from the Court's ECF system.

<u>s/Paul H. Saint-Antoine</u>
Paul H. Saint-Antoine