IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE BLOOD REAGENTS ANTITRUST LITIGATION** <br><br> **THIS DOCUMENT RELATES TO: ALL ACTIONS** | MDL Docket No. 09-2081 |

### MEMORANDUM IN SUPPORT OF DISTRIBUTION OF CY PRES AWARD

Plaintiffs provide this final update to the Court on the status of the administration of claims filed by claimants. Claims administration and subsequent distributions are complete: $23,266,550.06 has been distributed to 2,358 authorized claimants. After extensive distribution efforts, detailed below, $28,917.46 remains in the Qualified Settlement Fund ("QSF"). The reason for this residual amount is that some claimants did not cash their original or second checks, despite repeated follow-up.

Accordingly, Plaintiffs hereby move for an Order to disburse the remaining funds via *cy pres* to The Leukemia & Lymphoma Society ("LLS"), the largest nonprofit funder of blood cancer research in the U.S.[1] If the Court approves this Motion, all settlement funds from this litigation will have been distributed.

**A. Settlement History**

1. On December 14, 2018, claims administrator KCC Class Action Services, LLC ("KCC") mailed printed claim forms to 7,240 Class Members that had been identified as having made direct purchases of traditional blood reagents ("TBR") from Defendants between January 1, 2001 and April 30, 2009. *See* Affidavit of Markham Sherwood ¶ 5 (ECF No. 471). Class Members

---

[1] https://www.lls.org/who-we-are (last visited April 11, 2023).

were instructed to complete the claims form and postmark it no later than February 20, 2019. *Id.* Class Members also had the option of visiting the case website to download a blank copy of the claim form to fill out and submit to KCC. *Id.* After evaluating and processing the claim forms received, KCC identified: 1,258 valid Damages Period claims, with total qualifying TBR purchases amounting to $90,586,647.75; and 58 valid Post-Damages Period claims with a cumulative value of $14,500 (58 x $250). *See* Ex. 1, Declaration of Derek Smith ¶¶ 4-5.

2.  This Court approved Plaintiffs' proposed Plan of Distribution on November 12, 2019 (ECF No. 475) ("Initial Distribution Order"). In accordance with the Court's Initial Distribution Order, KCC mailed 1,316 checks totaling $20,927,025.81 to Authorized Claimants on December 5, 2019. *See* Smith Decl. ¶ 5. This Initial Distribution included a) 1,107 Authorized Claimants that received approximately 90% of their estimated distribution, and b) 209 Authorized Claimants that received a one-time $250 payment. *Id.* Nearly all Authorized Claimants (98.94%) cashed their check (including 98.09% of the $250 checks). *Id.* After Authorized Claimants deposited their checks worth a combined value of $20,900,724.09, there remained uncashed checks amounting to $26,301.72. In its Initial Distribution Order, the Court authorized the Claims Administrator to reserve 10% of the Net Settlement Fund, in case there were additional unexpected, "valid claims that were not previously compensated or claims with incorrect distributions." *See* Initial Distribution Order at 2. These reserved funds totaled $2,326,683.38. *See* Smith Decl. ¶ 7.

3.  After the Initial Distribution, there remained: (a) the 10% of the Net Settlement Fund that the Court authorized the Claims Administrator to hold back ($2,326,683.38); (b) uncashed checks totaling $26,301.72; and (c) an income tax refund of $33,734.65. *Id*. Thus, combined, there was $2,386,719.75 available for distribution (the "Reserve Fund"). *Id*. The Court

authorized the distribution of this Reserve Fund on June 15, 2020 (ECF No. 480) (the "Second Distribution").

4. Consistent with the Court's Order, KCC conducted the Second Distribution, causing 1,103 checks, totaling $2,386,719.63, to be issued to the Authorized Claimants on January 22, 2021.[2] *See* Smith Decl. ¶ 8. The Second Distribution included 1,096 Authorized Claimants that were due a portion of their estimated share of settlement funds (which amounted to 8.77% of their total share after accounting for the authorized late claims), and 7 Authorized Late Claimants that were issued 100% of their estimated share of settlement funds.[3] *Id*. 1,057 of the Second Distribution checks were cashed, totaling $2,365,825.97, and 46 checks were not cashed, totaling $20,893.78. 44 of the checks passed their void date of April 22, 2021. *See* Smith Decl. ¶ 9. KCC reissued two of the checks on July 2, 2021 and October 13, 2021, respectively, at the request of the claimants. *Id*. Both checks went uncashed and have also passed their void dates. All uncashed checks have now been stopped, leaving $20,893.90 (the "Net Residual Amount") remaining in the QSF.[4] *Id*.

5. An income tax refund of $10,708.56 in 2020, and an income tax payment of $2,685.00 in 2021 brings the total Net Residual Amount to $28,917.46 in the QSF. *See* Smith Decl. ¶ 9.

---

[2] The $0.12 discrepancy between funds available and funds distributed was due to rounding. *See* Smith Decl. ¶ 8.
[3] These late claimants did not timely submit their claims due to "compelling circumstances justifying the late acceptance of" these claims pursuant to Paragraph 5 of the Initial Distribution Order.
[4] *See supra* n. 2

**B. *Cy Pres* is the Most Appropriate Remedy**

6. The costs of making a third distribution to class members, combined with the dwindling number of claimants who are eligible and would likely cash their distribution checks, make a third distribution impractical and inefficient. KCC estimates that the costs to make a third distribution would be approximately $10,000, leaving roughly $18,917.46 to distribute to the Authorized Claimants and Late Authorized Claimants who deposited their Second Distribution checks. *See* Smith Decl. ¶ 10. The average payment would be approximately $18. *Id*. Thus, Plaintiffs' Counsel proposes a *cy pres* distribution of the Net Residual Amount to the LLS, a national non-profit whose mission is to cure blood cancers and improve the quality of life of blood cancer patients.[5] LLS has invested more than $1 billion since 1949 to help accomplish this mission.[6] The projects LLS funds include research that utilize blood reagents.

7. "In class actions, courts have approved creating *cy pres* funds, to be used for a charitable purpose related to the class plaintiffs' injury, when it is difficult for all class members to receive individual shares of the recovery and, as a result, some or all of the recovery remains." *Howe v. Townsend (In re Pharm. Indus. Average Wholesale Price Litig*.), 588 F.3d 24, 33 (1st Cir. 2009) (citing 4 A. Conte & H. Newberg, NEWBERG ON CLASS ACTIONS §11:20 (4th ed. 2002)). "[C]ourts are not in disagreement that *cy pres* distributions are proper in connection with a class settlement, subject to court approval of the particular application of the funds." 4 A. Conte & H. Newberg, NEWBERG ON CLASS ACTIONS, §11:20, at 28 (4th ed. 2002).

8. The LLS supports purchasers of blood reagents as a leader in advancing breakthroughs in treating blood cancers such as lymphoma, leukemia, and Hodgkin's disease.[7]

---

[5] https://www.lls.org/mission (last visited April 11, 2023).
[6] *Id.*
[7] https://www.lls.org/lls-research (last visited April 11, 2023).

Specifically, the LLS funds bone marrow transplants (where blood is made in the body) and research into blood-derived therapies and treatments. The LLS also funds research into blood-based biomarkers, such as circulating tumor DNA (ctDNA), which are used for diagnosing and relapse monitoring. LLS currently supports more than 30 grants totaling almost $15M relating to the use of blood-derived therapies to help diagnose, treat, and manage blood cancers. Thus, the LLS, as a non-profit humanitarian organization with a nationwide mission that supports purchasers of blood reagents, is an appropriate *cy pres* recipient of the Net Residual Amount.

9. Pursuant to paragraph 37 of Plaintiffs' settlement agreement with Defendant Ortho-Clinical Diagnostics, Inc. ("Ortho"), Plaintiffs met and conferred with Ortho's counsel on our recommendation that the LLS be the recipient of the *cy pres* award, and Ortho counsel had no objection.

### C. Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the [Proposed] Order Granting Plaintiffs' Motion for Cy Pres Distribution of Remaining Funds, submitted herewith.

**DATED**: April 19, 2023

**BY**: /s/ *Jeffrey J. Corrigan*
Jeffrey J. Corrigan
Jeffrey L. Spector
Rachel E. Kopp
**SPECTOR ROSEMAN & KODROFF, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
(215) 496-0300
(215) 496-6611 (Fax)
jcorrigan@srkattorneys.com
jspector@srkattorneys.com
rkopp@srkattorneys.com

*CLASS COUNSEL*